FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ AUG 17 2016 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

– against –

RAJENDRA RAMRATTAN,

　　　　　　　Defendant.

16-CR-239

Statement of Reasons Pursuant to
18 U.S.C. § 3553(c)(2)

**Appearances**

**For United States:**

Robert L. Capers
United States Attorney, E.D.N.Y.
By: Nomi Danielle Berenson

**For Defendant:**

Michael Daniel Weil
Federal Defenders of New York, Inc.

JACK B. WEINSTEIN, Senior United States District Judge:

## Table of Contents

I. Introduction ...................................................................................................................1
   A. Instant Offense: Importation of Cocaine into the United States................................2
   B. Arrest .........................................................................................................................3
   C. Guilty Plea ................................................................................................................3
   D. Sentencing ................................................................................................................3
II. Offense Level, Category, and Sentencing Guidelines Range.........................................4
III. Law..................................................................................................................................4
IV. 18 U.S.C. § 3553(a) Considerations................................................................................6
V. Consistency in Sentencing...............................................................................................8
VI. Sentence...........................................................................................................................8
VII. Conclusion.......................................................................................................................9

### I. Introduction

Defendant Rajendra Ramrattan is a twenty-nine year old Guyanese citizen, born in Georgetown, Guyana. Presentence Investigation Report, July 14, 2016 ("PSR"), at ¶ 29. He was arrested on April 6, 2016 at John F. Kennedy ("JFK") airport. *Id.* at ¶ 7. Customs and Border Protection ("CBP") officers discovered plastic bags containing cocaine in his luggage during an enforcement examination. *Id.* at ¶¶ 2-3. Mr. Ramrattan has been in federal custody at the Brooklyn Metropolitan Detention Center ("MDC") since the date of his arrest. *Id.* at ¶ 36. On June 15, 2016, he pleaded guilty to count one of a two-count indictment charging him with importation of cocaine into the United States, in violation of sections 952(a), 960(a)(1) and 960(b)(3) of the United States Code, title 21. *Id.* at ¶ 1.

On July 27, 2016, Mr. Ramrattan was sentenced to time served of approximately three months, three years of supervised release, and a $100 special assessment. *See* Sentencing Hearing Transcript, July 27, 2016 ("Sent. Hr'g"); Order, July 27, 2016, ECF No. 20. He is expected to be deported following his release from criminal custody in the present case. *See* Sent. Hr'g.

An additional period of incarceration would burden the taxpayers with an unnecessary cost, while depriving the defendant's family, particularly his two young children, of the benefit of his paycheck.

**A.   Instant Offense: Importation of Cocaine into the United States**

Mr. Ramrattan was charged with a serious offense: importing cocaine into the United States. On April 6, 2016, he arrived at JFK airport in Queens, New York, aboard a connecting Caribbean Airlines flight from Port of Spain, in Trinidad and Tobago. PSR at ¶ 2. His flight originated from Guyana. *Id.* Upon his arrival, he was selected for an enforcement examination by CBP officers. *Id.* One suitcase and one bag were examined. *Id.* The officers discovered a plastic bag containing an unknown substance inside the pocket of a pair of jeans in defendant's suitcase. *Id.* at ¶ 3. Mr. Ramrattan admitted that it was "something illegal." *Id.* Three more plastic bags containing a white powdery substance were found in his suitcase. *Id.* According to a Drug Enforcement Administration ("DEA") lab report, they contained a net weight of 512.8 grams of cocaine. *Id.*

Defendant was placed under arrest and advised of his *Miranda* rights, which he waived. *Id.* at ¶ 4. Immediately, he took responsibility for his actions, stating "I did this, and there is no excuse." *Id.* He initially stated that he was planning on selling the drugs himself once in the United States. *Id.* He subsequently recanted his post-arrest statements and provided a detailed and truthful account of his conduct to the government. *See id.* at ¶¶ 4-5.

He explained that he met an individual several years prior in Trinidad and Tobago. *Id.* at ¶ 5. When he was in Guyana, defendant asked this individual for a loan. The individual responded that he would give him $5,000 if defendant bought half a kilogram of cocaine in Guyana. *Id.* Defendant used $2,000 of the money he was given to purchase the cocaine. *Id.* Defendant also borrowed money from a friend in Guyana to purchase his plane ticket to the United States. *Id.*

Mr. Ramrattan was directed by the individual to break down and vacuum seal the package of cocaine. *Id.* Lacking a vacuum sealer, he instead wrapped the cocaine in black carbon paper and placed it into his luggage. *Id.* He believed this would prevent discovery by law enforcement. *Id.* at ¶ 4.

Mr. Ramrattan traveled to New York City on his own. He was planning on contacting the individual upon his arrival in the United States, in order to arrange for the transfer of the cocaine. *Id.*

**B.     Arrest**

Defendant was arrested on April 6, 2016, after his arrival at JFK airport in Queens, New York. *Id.* at ¶¶ 2, 4, 7. He has been in federal custody since the date of his arrest. *Id.* at ¶ 36.

**C.     Guilty Plea**

On June 15, 2016, Mr. Ramrattan pleaded guilty to count one of a two-count indictment. Count one charges that on April 6, 2016 defendant imported cocaine into the United States, in violation of sections 952(a), 960(a)(1) and 960(b)(3) of the United States Code, title 21. *Id.* at ¶ 1; Indictment, May 3, 2016, ECF No. 5. The applicable statute does not provide for a mandatory minimum term of imprisonment. The maximum term of imprisonment is twenty years. *See* 21 U.S.C. §§ 952(a), 960(a)(1) and 960(b)(3).

**D.     Sentencing**

A sentencing hearing was conducted on July 27, 2016. *See* Sent. Hr'g. The proceedings were videotaped to develop an accurate record of courtroom atmosphere, as well as the factors and considerations that a court evaluates in imposing a sentence. *See* 18 U.S.C. § 3553(a); *In re Sentencing*, 219 F.R.D. 262, 264-65 (E.D.N.Y. 2004) (describing the value of video recording for the review of sentences on appeal).

## II. Offense Level, Category, and Sentencing Guidelines Range

The Guidelines base offense level is 24. *See* PSR at ¶ 12; U.S.S.G. §§ 2D1.1(a)(5), 2D1.1(c)(8). This was decreased by two points pursuant to U.S.S.G. section 2D1.1(b)(17), as defendant met the "safety valve" criteria set forth in section 5C1.2(a): (1) Mr. Ramrattan does not have more than one criminal history point; (2) he used no violence, threats, or dangerous weapons in connection with the offense; (3) there was no serious bodily harm caused to anyone; (4) he was not an organizer, leader, manager, or supervisor of others in the offense; and (5) he truthfully provided to the government information regarding the offense. *See* PSR at ¶ 13; U.S.S.G. §§ 2D1.1(b)(17), 5C1.2(a). The government agreed that the defendant was entitled to this two-level reduction. *See* Sent. Hr'g.

The offense level was further reduced by: four points pursuant to U.S.S.G. section 3B1.2(a) because as a courier defendant was a minimal participant in the offense; two points pursuant to section 3E.1.1(a) for defendant's acceptance of responsibility; and one point pursuant to section 3E.1.1(b) because the government was notified in a timely manner of defendant's intention to enter a plea of guilty. PSR at ¶¶ 15-20.

The total adjusted offense level is 15. *Id.* at ¶ 21. With a criminal history category of I, this yields a Guidelines sentencing range of 18 to 24 months imprisonment. *See id.* at ¶¶ 24, 57.

The parties do not object to the Guidelines calculation. *See* Sent. Hr'g. The government does not oppose a below-Guidelines sentence, given defendant's immediate acceptance of responsibility and the significant hardships imposed by his presumed deportation. *See* Gov't Sentencing Mem., July 26, 2016, ECF No. 19, at 3.

## III. Law

Pursuant to the Supreme Court's decision in *United States v. Booker*, the Guidelines are advisory; a sentencing court may depart from the Guidelines in the interest of justice as well as in

4

light of other statutory concerns as expressed in section 3553(a). *United States v. Booker*, 543 U.S. 220, 245-46 (2005); *see also United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) ("It is now, however, emphatically clear that the Guidelines are guidelines-that is, they are truly advisory. A district court may not presume that a Guidelines sentence is reasonable; it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense.").

A sentencing court shall "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). If the sentence is not of the kind prescribed by, or is outside the range of, the Sentencing Guidelines referred to in section 3553(a)(4) of title 18, the court shall indicate the specific reasons for imposing a different sentence. *See* 18 U.S.C. § 3553(c)(2). These "reasons must also be stated with specificity in a statement of reasons form." *Id.* Even though the Guidelines are now advisory rather than mandatory, *Booker*, 543 U.S. at 245-46, the sentencing court must still adhere to the requirements of 18 U.S.C. § 3553(c)(2). *United States v. Jones*, 460 F.3d 191, 197 (2d Cir. 2006).

The sentencing court's written statement of reasons shall be "a simple, fact-specific statement explaining why the Guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Rattoballi*, 452 F.3d 127, 138 (2d Cir. 2006), *abrogated in part on other grounds by Kimbrough v. United States*, 552 U.S. 85 (2007). Such a statement should demonstrate that the court "'considered the parties' arguments' and that it has a 'reasoned basis for exercising [its] own legal decisionmaking authority.'" *Cavera*, 550 F.3d at 193 (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)).

In view of the excessive incarceration rates in the recent past and their unnecessary, deleterious effects on individuals sentenced, society and our economy, parsimony in incarceration

5

is to be prized. *See, e.g.*, 18 U.S.C. § 3553(a) ("The court shall impose a sentence sufficient, but not greater than necessary"); National Research Council of the National Academies, *The Growth of Incarceration in the United States: Exploring Causes and Consequences*, 8 (2014) ("*Parsimony*: the period of confinement should be sufficient but not greater than necessary to achieve the goals of sentencing policy.").

IV.  **18 U.S.C. § 3553(a) Considerations**

The court considered the "nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). For the reasons stated on the record, a custodial sentence is unnecessary. *See* Sent. Hr'g.

Mr. Ramrattan grew up in middle-income socioeconomic circumstances in Guyana. He lived with both parents in Subrayanville, Guyana, until the age of ten, when his parents separated. His mother moved to Trinidad and Tobago. Defendant maintained contact with her; she often visited the family. PSR at ¶ 29. He lived with his father at the family residence in Guyana until 2007, when his father moved to Canada. Mr. Ramrattan continued to reside in this same home with his longtime girlfriend and two young children until his arrest in the present case. *See id.* at ¶¶ 29, 32-33.

Defendant's mother reported that defendant "grew up in above-average socioeconomic conditions" and "had everything he needed." *Id.* at ¶ 35. He was a good student, graduating high school in 2003 and subsequently attending vocational schools in Guyana and Trinidad, where he earned "certificates in Accountancy, International Relations, Marketing, and Business Management." *Id.* at ¶¶ 46-47.

Upon graduating high school, defendant began working for his father's business, a condiment bottling factory. *See* Sent. Hr'g; *see also* PSR at ¶ 53. He eventually took over the

company in 2007 when his father moved to Canada. PSR at ¶ 53. The business subsequently closed in 2014 "due to financial difficulties." *Id.*

From 2014 to the date of his arrest, defendant worked as a manager for another import and export company, Caribbean King, based in Canada. *Id.* at ¶ 51. From 2007 until his April 2016 arrest, defendant was also assisting his father with the importation and exportation of shipping containers, for a minimal salary. *Id.* at ¶ 52.

For a period of about six months, defendant temporarily relocated to Trinidad to assist his mother in operating a restaurant she owned. *Id.* at ¶ 50. The restaurant closed in February 2015 due to financial problems. *Id.* Defendant's mother subsequently moved to Queens, New York, where she currently resides. *Id.*

Until his arrest, Mr. Ramrattan was responsible for financially supporting his longtime girlfriend, Jaimala Singh, and their two sons, an eight and a ten year old boy. Defendant's girlfriend and sons all live at defendant's residence in Guyana. Ms. Singh works as a secretary for a security business. *Id.* at ¶ 32. According to the defendant's mother, she has been struggling to care for the two children since defendant's arrest. *Id.* at ¶ 34. The defendant's father has been providing some financial support to the family during defendant's absence. *Id.* at ¶ 32. Mr. Ramrattan reports his oldest child has been "acting out and not listening to his mother since [defendant's] incarceration." *Id.*

Following the failure of both family businesses and a falling out with his father, in early 2016 defendant asked an individual he had met in Trinidad and Tobago for a loan. *See* Sent. Hr'g; PSR at ¶ 5. The individual suggested that Mr. Ramrattan instead earn $5,000 by illegally importing cocaine into the United States—the basis for the instant offense. *See* Sent. Hr'g. Mr. Ramrattan has no other criminal history. PSR at ¶¶ 22-27.

7

Since his arrest, defendant has shown remorse for this conduct. He has apologized to his family and the court for his "bad choice," and has provided information to the government relating to the offense. *See* Sent. Hr'g. The interests of justice are best served by having him deported back to Guyana immediately. Imposing a custodial sentence would require the United States to pay for defendant's incarceration, while also depriving his two children of the support that his paycheck would provide. The cost to taxpayers to imprison defendant is approximately $31,976 annually, while post-conviction supervision has been estimated to cost $4,097 per year. *See* Mem. from the Administrative Office of the U.S. Cts., Cost of Community Supervision, Detention, and Imprisonment, June 24, 2016.

## V. Consistency in Sentencing

This court has been attempting to rationalize its sentences by establishing general criteria for 'similar' cases. With respect to cases in which the defendant is a noncitizen facing deportation following incarceration, this court has determined that, "[c]onsidering the grave hardships deportation entails, the nation's present deportation policy, and the core purposes of criminal sentencing, *see* 18 U.S.C. § 3553, imposition of minimal prison time with prompt deportation should be normal in such cases—subject to variations for individual circumstances." *United States v. Chin Chong*, No. 13-CR-570, 2014 WL 4773978, at *1 (E.D.N.Y. Sept. 24, 2014); *see also United States v. Sarpong*, No. 14-CR-242, 2014 WL 5363775, at *2 (E.D.N.Y. Oct. 21, 2014) (accounting for prospect of deportation when imposing a term of incarceration); *United States v. Palaguachy*, No. 14-CR-0184, 2014 WL 6606668, at *2 (E.D.N.Y. Nov. 19, 2014) (same); *United States v. Florez Parra*, No. 14-CR-332, 2015 WL 105885, at *2 (E.D.N.Y. Jan. 7, 2015) (same).

## VI. Sentence

Under section 3553(a)(2)(B) of title 18, a sentencing court must consider two major factors: general and specific deterrence. In light of the nature of the offense and the characteristics of the

defendant, Mr. Ramrattan is sentenced to time served and a supervised release term of three years. Sent. Hr'g. A $100 special assessment is imposed. 18 U.S.C. § 3013(a)(2)(A). No fine is levied because Mr. Ramrattan has no substantial assets. PSR at ¶ 54; Sent. Hr'g. The remaining open count is dismissed on the government's motion. *See* Sent. Hr'g.

General and specific deterrence are achieved by the sentence imposed. Mr. Ramrattan pleaded guilty to an extremely serious offense. His role in the offense was, however, minimal. He has expressed genuine remorse for his conduct and understands the gravity of his actions. Defendant served approximately three months in prison in a foreign country away from his family, including his two young sons whom his girlfriend is struggling to support in his absence. He will be deported and will be unable to visit his mother, who resides in New York. He will suffer the collateral consequences of a felony conviction, as well as the conditions of a three year supervised release term.

## VII. Conclusion

All relevant elements of the Guidelines and statutes have been considered. Respectful consideration was given to the Sentencing Commission's policy statements, and all other factors listed under section 3553(a) of title 18, to ensure that the sentence is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a).

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: August 3, 2016
Brooklyn, New York

9